# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JASON RAMON JORDAN,     )<br>    Plaintiff,     )<br>     )<br>v.     )<br>     )<br>ELLISON EVERETT MCDUFFIE,     )<br>    Defendant.     )<br>     ) | Case No.: 7:17-cv-00500<br><br><br><br>By:    Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

Jason Ramon Jordan, a Virginia inmate proceeding pro se, filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Ellison McDuffie denied him mental health treatment and retaliated against him. On September 28, 2018, the court entered an opinion denying Dr. McDuffie's motion to dismiss, ECF No. 29. Dr. McDuffie filed a motion for summary judgment, ECF No. 42, and Jordan has replied. Having considered the record, the court will **GRANT** Dr. McDuffie's motion for summary judgment and **DISMISS** Jordan's claims without prejudice.

## I.

Jordan is currently incarcerated at Red Onion State Prison ("Red Onion"). Dr. McDuffie is a psychiatrist who provides contract services at Red Onion through his employer, Zafar Ahsan, M.D. Dr. McDuffie sees only those inmates who "Qualified Mental Health Professionals" ("QMHP") at Red Onion have referred to him. Inmates are referred to Dr. McDuffie for various reasons, including when QMHPs determine that he or she has mental health symptoms that can be treated with medication.

Dr. McDuffie, along with other QMHPs, began to treat Jordan in 2012. Dr. McDuffie diagnosed Jordan with bipolar and multiple personality disorders and prescribed him medication. See Def.'s Mem. Supp. Mot. Summ. J., ECF No. 43, at 4. Between 2012 to 2014, Dr. McDuffie and QMHPs continued to treat Jordan. On October 2, 2014, Dr. McDuffie saw Jordan and Jordan reported his medications were "not helping much." Id. at 5. Dr. McDuffie further found that Jordan's "affect was full, his thought process was linear, his judgment was good, and no perceptual disturbances." Id. On October 24, 2014 and November 25, 2014, a QMHP saw Jordan and documented that he was stable and did not present any mental health issues.

According to Jordan, in 2014, he was given more medications based on his October 2, 2014 complaint to Dr. McDuffie. See Am. Compl., ECF No. 20, at 3-4. Jordan states that he was required to have his blood tested periodically to ensure that the medications did not affect his health. When his blood testing was overdue, Jordan filed an offender request form, but he received no response. In December 2014, Jordan spoke with a QMHP who was making rounds and told her that his blood testing was overdue. When his blood testing still had not been ordered, Jordan filed a complaint against Dr. McDuffie with the Virginia Department of Health Professions (Department of Health). Then, Jordan alleges, following his complaint, Dr. McDuffie discontinued his mental health medications. Id.

However, according to Dr. McDuffie, on December 11, 2014, he again saw Jordan, found that his "affect was full, his thought process was linear, his judgment was good, and no perceptual disturbances was," and directed Jordan to continue his medications and schedule a follow-up appointment. Id. On December 31, 2014, a QMPH documented that Jordan

"appeared to be agitated with security staff but stable and does not present any mental health issues at this time." Id. Then, when Dr. McDuffie saw Jordan on January 22, 2015, he stopped prescribing Jordan psychiatric medication, stating:

> Patient cannot be safely administered medication due to repeated hoarding of meds and irregularities in compliance. His medications will be stopped today and he will be reassessed at the next visit. If he needs mental health services after the next visit he will need to focus on non-medicated options of treatment. He repeatedly masturbates in the presence of staff and retaliates when he faces consequences. These events are tied to the administration of medications, thus stopping his medication should facilitate some progress in his institutional functioning.

ECF No. 43 at 6.[1]

On February 20, 2015, Dr. McDuffie saw Jordan for a follow-up appointment. According to Dr. McDuffie, "[h]e noted [Jordan's] history of bipolar disorder, but determined that he had no active diagnosis at that time." ECF No. 43 at 6. Dr. McDuffie continued Jordan on non-medication options of treatment and Jordan was to continue seeing QMHPs for treatment. According to Jordan, during the February 20, 2015 appointment, Dr. McDuffie was "aggressive" and threatened Jordan's well-being because Jordan filed a complaint with the Department of Health. ECF No. 20 at 3-4. Jordan claims that Dr. McDuffie stated: "You will suffer the consequence for reporting to [the] Department of Health Profession[s]." Id.

After this experience, over the next few years, QMHPs continued to evaluate Jordan.[2] According to Jordan, on June 23, 2015, and February 8, 2016, Jordan spoke with a QMHP,

---

[1] In support of this conclusion, Dr. McDuffie filed a sworn affidavit by Nurse Wendy McCoy. Nurse McCoy stated that Jordan "wasted his medication by throwing it in the toilet on December 20, 2014" and that Jordan masturbated in front of her. ECF No. 46-2 at 2-3.
[2] Dr. McDuffie submitted over 30 mental health monitoring reports from August 29, 2014 through December 1, 2017, where the QMHPs evaluated Jordan for mental health needs.

3

complained that he had difficulty sleeping because of his "serious mental illness while in solitary confinement," and asked for "help." ECF No. 20 at 4. Also, Jordan alleges that on February 8, 2016, he submitted an offender request form to Dr. McDuffie, seeking mental health treatment, but he never received a response. Id. Then on October 3, 2017, Jordan submitted another offender request form complaining that his mental illness had "gotten worse" and that he had received no treatment. Id. at 5. A QMHP responded and advised Jordan that he would notify Dr. McDuffie. ECF No. 45-1, 30.

On October 5, 2017, Jordan then filed his first informal complaint, pursuant to the Red Onion grievance process, claiming that he was denied and "deprived of mental health treatment to be seen by Physician McDuffie" and that he sent requests to see Dr. McDuffie for over two years. ECF No. 5 at 1. On October 11, 2017, Jordan received a response stating that he was receiving the proper treatment and that a psychiatric appointment was not warranted at that time. Id. On October 12, 2017, Jordan filed his regular grievance, reiterating his informal complaint, claiming that he has "request[ed] many time[s] to be seen by [a] physician due to [his] illness for 2 years." Id. at 2. That regular grievance was rejected at intake on October 16, 2017, because, as the form indicated, the regular grievance was a "[r]equest for services." Id. at 3.

On November 14, 2017, Jordan then submitted an offender request form to Dr. McDuffie, indicating that the QMHP had advised him to drop the complaints against Dr. McDuffie in order to be treated, and asking Dr. McDuffie whether he needed to call or write to the Department of Health to be able to drop the charges. On November 30, 2017, Dr. McDuffie responded that Jordan should "continue working with [the QMHP] and [they]

would provide care to [him] like everyone else." ECF No. 20 at 5. Dr. McDuffie also acknowledged that it was Jordan's right to complain and that, despite the inconveniences of responding to complaints, he had "no bias or animosity" against Jordan. Id.

On February 5, 2018, Jordan filed his second informal complaint. In this informal complaint, Jordan claims that on January 18, 2018, Jordan asked Dr. McDuffie why he was not receiving medical treatment and Dr. McDuffie told him that it was because Jordan filed a complaint with the Department of Health. ECF No. 45-1 at 32. On February 13, 2018, Jordan received a response stating the he was receiving the proper treatment and that psychiatric intervention is not warranted according to his mental health classification. Id. The response states that Jordan "is receiving the appropriate level of services according to [his] mental health classification and security level." Id.

Jordan then filed his verified amended complaint on February 14, 2018. ECF No. 20. On February 14, 2018, Jordan also filed a regular grievance, in response to his February 5, 2018 informal complaint. In this regular grievance, Jordan reiterated his complaints against Dr. McDuffie and sought "damage of emotional distress and deliberate indifference of negligent compensatory damage in amount of $110,000," along with the suspension of Dr. McDuffie. ECF No. 45-1 at 33. The regular grievance was marked received on February 16, 2018. Id. On February 27, 2018, Jordan received his Level I response to his regular grievance, where the warden stated that Jordan was receiving the proper mental health services that he was supposed to receive and "[t]here has been no violation of operating procedure." Id. at 35.

Jordan appealed this decision on February 28, 2018. On March 22, 2018, the regional director completed the Level II response, reaffirming that Jordan "[has] been monitored and

5

screen[ed] in accord with policy. Most recently, [Jordan was] seen on 2/5/18 . . . [and the regional director] [] determined that [Jordan's] grievance appeal is not founded." Id. at 36. The form further states "[i]n accordance with [VDOC OP] 866 governing the inmate grievance procedure, Level II is the last level of appeal for this complaint." Id.

Liberally construed, Jordan's verified amended complaint alleges (i) that Dr. McDuffie violated Jordan's First Amendment rights by retaliating against him for filing a complaint with the Department of Health and (ii) that Dr. McDuffie violated Jordan's Eighth Amendment rights by denying Jordan access to proper mental health treatment.[3] In his motion for summary judgment, Dr. McDuffie argues that (i) Jordan failed to exhaust available administrative remedies; (ii) Jordan's Eighth Amendment complaint is moot because he is receiving mental health treatment; (iii) Dr. McDuffie did not violate Jordan's First Amendment rights because there was no adverse action in relation to Jordan's complaints, Jordan failed to demonstrate that he suffered more than de minimis adverse impact on the exercise of his constitutional rights, and the First Amendment does not apply to Dr. McDuffie as a private, government contractor; and (iv) Dr. McDuffie did not violate Jordan's Eighth Amendment rights. Because Jordan failed to exhaust available administrative remedies, the court will grant Dr. McDuffie's motion for summary judgment.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] Jordan is proceeding pro se and, thus, entitled to a liberal construction of the pleading. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007).

6

movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See id. at 255; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Dr. McDuffie claims that he is entitled to summary judgment because Jordan failed to exhaust available administrative remedies. A prisoner cannot bring a civil action concerning prison conditions until first exhausting available administrative remedies. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To properly exhaust a claim, a prisoner must file grievances with sufficient detail to alert prison officials of the possible constitutional claims that are now alleged as a basis for relief. See Smith v. Rodriguez, No.

7

7:06-cv-00521, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. Woodford v. Ngo, 548 U.S. 81, 90 (2006). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 866.1, "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing

8

penalties and/or procedural errors; "State and Federal court decisions, laws, and regulations"; and other matters beyond the VDOC's control.

Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities. Prior to submitting a grievance, the inmate usually must make a good-faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units.

If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. Only one issue per regular grievance may be addressed. Regular grievances may receive three levels of review. A facility's Warden or Superintendent conducts the first, "Level I" review. If the inmate is unsatisfied with the Level I determination, the inmate may appeal the determination within five days of receipt to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review.[4] A Level I response must be issued within thirty days, and a Level II response must be issued within twenty days. Expiration of the time limit without issuance of a response at any stage of the process automatically entitles an inmate to appeal to the next level.

Once the offender has exhausted available remedies, a lawsuit may be filed. See VDOC OP 866.1(IV)(O)(1), ECF No. 45-1 at 60. VDOC OP 866.1(IV)(O)(2) further states that "[a]n offender meets the exhaustion requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue." Id.

---

[4] For the few issues appealable to Level III, the inmate may appeal the Level II determination within five days of receipt to the Deputy Director or Director of the VDOC.

9

Here, Jordan's own exhibits demonstrate that he failed to timely exhaust his available administrative remedies.

Jordan submitted two informal complaints, one in 2017 and one in 2018. In 2017, Jordan also filed a regular grievance that was denied at intake because it was a request for services. Pursuant to VDOC OP 866.1, because the regular grievance was denied, it did not exhaust available remedies. Further, Jordan did not seek review of the intake denial. The 2018 informal complaint was fully exhausted. Jordan submitted a copy of his Level II response, completed on March 22, 2018, where the regional director stated: "Level II is the last level of appeal for this complaint." Id. at 36.

However, Jordan filed his amended complaint on February 14, 2018, over a month before he received the Level II response. In fact, Jordan's amended complaint was filed the same day as his regular grievance, two steps before he would be in a position to file a case in this court pursuant to VDOC OP 866.1. Thus, the court concludes that Jordan's § 1983 suit against Dr. McDuffie was prematurely filed and must be dismissed.[5]

**IV.**

For the stated reasons, the court **GRANTS** Dr. McDuffie's motion for summary judgment under § 1997e(a) for failure to exhaust available administrative remedies before bringing the lawsuit and **DISMISSES** Jordan's claims without prejudice. An appropriate Order will be entered.

---

[5] Because the court grants summary judgment in favor of Dr. McDuffie based on Jordan's failure to exhaust available administrative remedies, the court need not consider Dr. McDuffie's other grounds for summary judgment.

Entered: March 17, 2020

Michael F. Urbanski
Digitally signed by Michael F. Urbanski
DN: cn=Michael F. Urbanski, o=Western District of Virginia, ou=United States District Court, email=mikeu@vawd.uscourts.gov, c=US
Date: 2020.03.17 13:52:38 -04'00'

Michael F. Urbanski
Chief United States District Judge